**THE STATE OF NEW HAMPSHIRE**
United States District Court – District of NH

| | |
|---|---|
| John Doe<br><br>v.<br><br>Franklin Pierce University | Civil Action No. |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO PROCEED UNDER A PSEUDONYM**

Plaintiff John Doe ("Doe") hereby requests permission to proceed under a pseudonym in the instant case.

In support, it is stated:

BACKGROUND

1. John Doe brings his civil action against Franklin Pierce University (FPU), claiming that FPU discriminated against him on the basis of sex in violation of Title IX, and breached its contract with him and other duties owed to him, in its administration of misconduct proceedings that were initiated after a complaint by Sally Smith.

2. During the 2018-2019 school year, when John Doe ("John") and "Sally Smith" ("Sally") were both freshman, they began dating. Beginning that year, John and Sally had an intimate, romantic, and sexual relationship. They had an on-again, off-again relationship that continued through the fall of their junior year.

3. After a physical altercation on October 27, 2021, Sally brought a complaint against John. An eviction letter sent by FPU to John

1

    described the complaint, alleged to have occurred on October 27, 2021, as follows: "Reported abuse of another student including suffocation, physically dragging the individual, and sexual assault."

4. Two days later, FPU sent further correspondence which referenced the alleged incident on October 27, and further alleged without detail that John had subjected Sally to "other forms of physical and emotional abuse throughout your relationship."

5. Correspondence from FPU to John, and FPU's rules governing Title IX and other misconduct hearings, made clear that the process would be confidential.

6. An outside attorney, Susan Schorr was retained to conduct the Title IX investigation. Attorney Schorr conducted her investigation and eventually provided a report that described Sally's allegations: About twenty separate episodes of sexual violence, physical violence, or other abusive behavior.

7. After the investigation closed, and shortly before the hearing, FPU provided notice of 14 specific charges, 7 under Title IX and 7 under FPU's misconduct policy. The details of the accusations, as developed at the hearing, included graphic details of alleged sexual assaults, physical assaults, and other alleged abusive behavior. These included allegations of an attempt to coerce Sally to engage in oral sex, sexual intercourse while Sally was asleep, and alleged abusive retaliatory conduct after Sally declined to engage in sexual activity.

8. Although FPU charged only John with sexual assault, dating violence and other forms of misconduct, the investigation report and testimony at the hearing included details of assaults allegedly committed by Sally against John, theft committed by Sally against John, and very graphic messaging about consensual sexual conduct that Sally wished to engage in.

9. After the hearing, and after an appeal process, FPU found John guilty of six of the fourteen accusations (but none of the alleged sexual assaults), barred him from campus, suspended him for three semesters, and ordered him to pay restitution to Sally. FPU ordered that details of the findings would be placed on John's permanent academic record.

10. Plaintiff's lengthy suspension and other disciplinary consequences will cause significant damage to his reputation, his education, and his career. It is unlikely he will be able to transfer to a desirable school given the 'scarlet letter' that has been placed on his academic record. The completion of his undergraduate education will be delayed. His prospects for continuing to play basketball for a NCAA Division II school with a full scholarship and pursue a career in any sector of the sports industries have been severely harmed.

11. John seeks an order allowing him to proceed under a pseudonym, and to refer to 'Sally' using a pseudonym, so that he can pursue his case without occasioning further reputational harm, and without

further harm to his mental and emotional health, the very harms he is seeking to undo.

## ARGUMENT

12. In order to prevail on this motion, John must overcome the "common law presumption in favor of public access." *Nat'l Org. For Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011). Further, Federal Rule 10(a) requires that "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a).

13. Nevertheless, "[s]everal circuit courts have condoned pseudonymous litigation." *Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005)(collecting cases). Neither the United States Supreme Court nor the First Circuit have decided the standards for allowing a litigant to proceed under a pseudonym, although they have adjudicated such cases without negative commentary about the use of a pseudonym. *E.g., Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Shibinette*, 16 F.4th 894 (1st Cir. 2021).

14. The First Circuit employs a balancing test for the related context of requests to seal judicial records. *McKee*, 649 F.3d at 70. The balance "must be struck, of course, in light of the relevant facts and circumstances of the particular case." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (quotations omitted).

15. In *Doe v. Trustees of Dartmouth College*, Civil No. 18-cv-040-LM, Opinion No. 2018 DNH 088 (D.N.H. 05/02/18), a case contextually

4

similar to this one, the court relied on a non-exhaustive nine-factor balancing test employed by the 3d Circuit Court of Appeals for determining whether a party would be allowed to litigate under a pseudonym. Slip op. at 11-12 (discussing *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011)).

16. The Third Circuit listed those nine factors as follows:

    (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; [] (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives . . . . [(7)] the universal level of public interest in access to the identities of litigants; [(8)] whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and [(9)] whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

    *Megless*, 654 F.3d at 409.

17. The first of these factors, the extent to which the identity of the litigant has been kept confidential, supports plaintiff's request. FPU conducted the accusatory, investigative, and hearing process confidentially in this case. The public cannot readily access any of the details of the accusations, investigation, hearing, or the outcome of the hearing. It is, by design, the opposite of a transparent process.

18. This is not to say that the findings will be kept confidential. FPU has made clear that it will record information about the findings in John's permanent academic record and make that available to anyone who requests and is eligible to receive his record, including employers, other educational institutions that John may apply to, and graduate schools. But the public is not provided a general right of access.

19. The second factor, the bases upon which disclosure is feared or sought to be avoided, also supports John's request. Plaintiff contends that public identification will significantly harm his reputation, his future prospects to play basketball for a NCAA school or professionally, and his long-term career prospects.

20. This case involves one of the most private matters litigation can address, the private sexual conduct of individuals. "[O]ne's sexual practices are among the most intimate parts of one's life," and the public disclosure of such information may subject one to embarrassment or ridicule. *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 74 (D.R.I. 1992) (discussed in context of transgender plaintiff). *See also Doe v. Univ. of St. Thomas*, No. 16-CV-1127-ADM-KMM, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) (unpublished) ("The complaint and its supporting documents describe very private sexual acts, whether consensual or not, between two young college students, and it is difficult to imagine any resolution of this case without further exploration of truly intimate matters.

Numerous courts, considering similar cases, have allowed plaintiffs to proceed pseudonymously in large part because of the very intimate nature of the claims at issue."); *Doe v. Cabrera*, 307 F.R.D. 1, 5 (D.D.C. 2014) ("Courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects"); *EW v. New York Blood Ctr.,* 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[M]any courts have held that, in lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm.").

21. The risk of substantial harm to John's reputation, educational and career prospects if he cannot litigate under a pseudonym, exists regardless of the outcome of this litigation. *Doe v. Univ. of St. Thomas*, No. 16-CV-1127-ADM-KMM at *2 ("Even if his lawsuit were successful and his claims of unfair treatment were vindicated down the road—an outcome about which the Court offers no opinion of likelihood—the complained-of damage to Mr. Doe's reputation would be perhaps unfixable if his identity is known. . . ."). Particularly in the internet and social media era, the mere association of plaintiff with phrases like "sexual assault" and "dating violence" will inflict great reputational harm. And it is not uncommon to have a case where a media outlet covers the pretrial proceedings in a case, but never

7

covers the outcome, because no reporter attends the jury trial, and no party issues a press release.

22. While John is careful here not to claim to be a defender of anyone else's interests, other courts have also relied on the complainant's privacy interest in granting motions to litigate under a pseudonym. *Doe v. Trustees of Dartmouth College*, Civil No. 18-cv-040-LM, Opinion No. 2018 DNH 088, *14-15 (D.C.N.H. 05/02/18). "Unlike a litigant, who in using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials, Sally Smith is a nonparty." *Id.* (quotations and citation omitted).

23. As discussed above, many details of this case could result in public embarrassment to Sally Smith if she was identified without pseudonym, including details of intimate sexual conduct, details of assaults and thefts committed by her against plaintiff, and the fact that the disciplinary board did not find her own sworn testimony to constitute sufficient evidence of sexual assault, which strongly implies that the board did not credit parts of her testimony.

24. The third factor, whether there is a public interest in maintaining the plaintiff's anonymity, is either neutral or favors granting this motion. In *Doe v. Smith*, a justice of this court "note[d] that there is authority for the proposition that precluding pseudonymous litigation in college disciplinary cases may have a chilling effect on future plaintiffs who seek to challenge the adequacy of the process." 1:18-cv-

8

00040-LM, * at 16 (citing *Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016). Since the disciplinary process itself is confidential, it stands to reason that prohibiting the use of pseudonyms in a federal court challenge to the outcome of the proceeding would have a chilling effect on plaintiffs.

25. The fourth factor, whether there is an atypically weak public interest in knowing the litigant's identities given the purely legal nature of the issues presented or otherwise, while arguably neutral, probably weighs against plaintiff. In *Doe v. Smith*, a justice of this court reasoned that the factor did not weigh in plaintiff's favor, because the "dispute is over how Dartmouth applied its policies in plaintiff's case, how it came to its determination of the underlying facts, and whether the procedure was tainted by any bias." 1:18-cv-00040-LM, at *16. While it can be argued that those issues require the public to know the educational institution's identity, not the plaintiff's identity, John accepts for purpose of this motion that the factor weighs against him.

26. The fifth factor, whether "the litigant [will] sacrifice a potentially valid claim simply to preserve [his] anonymity," weighs against plaintiff, because he will not forgo his right to litigate his claim in federal court if this motion results in a ruling against him. If this court rules against him, he will seek leave to file a substitute or

9

amended Complaint that refers to himself, Sally Smith, and the witnesses below by their true names.

27. The sixth factor, whether the litigant is seeking to use a pseudonym for nefarious reasons, weighs in favor of plaintiff's request, as he has only good faith intentions in seeking to keep his identity, and Sally Smith's identity, confidential.

28. The seventh factor, the universal interest in favor of open judicial proceedings, weighs against plaintiff.

29. The eighth factor, whether there is a stronger public interest in knowing the litigant's identity, in light of the subject matter of the litigation, the status of the litigant as a public figure, or any other reason, weighs in favor of plaintiff's motion. FPU is a private college. John Doe is a private (and youthful) individual, not a public figure. And as argued in paragraph (25) above, the public interest in knowing whether FPU has failed to enforce governing federal law in its own judicial proceedings, and whether FPU has breached its contractual and other obligations to a student, will be served regardless of nondisclosure of the identities of the students involved.

30. The ninth factor, whether any opposition to the use of a pseudonym is illegitimately motivated, cannot be assessed until FPU provides its position on this motion. But if FPU does not oppose this motion, or takes no position, then the factor weighs in favor of plaintiff as there is no such opposition.

31. John Doe asks this Court to rule, as a justice of this court ruled in the similar litigation discussed throughout this motion, *Doe v. Smith*, 1:18-cv-00040-LM, at *18, that an appropriate balancing of all the factors should result in the granting of this motion.

32. John Doe understands and acknowledges that even if this court rules in his favor for the purpose of pretrial proceedings, the factors may need to be rebalanced and could result in a different ruling should the case proceed to trial.

33. John Doe attempted to obtain the position of FPU prior to filing this motion but was not able to do so, thus FPU's position is unknown.

WHEREFORE, John Doe respectfully requests that this Court:

A) Grant this motion; or
B) Schedule a hearing on this motion, and
C) Grant such further relief as serves justice.

DATED: May 25, 2022                              Respectfully submitted,

/s Theodore M. Lothstein
Theodore M. Lothstein
N.H. Bar. No. 10562

/s Kaylee Doty
Kaylee Doty
N.H. Bar No. 273677
Lothstein Guerriero, PLLC
Five Green Street
Concord, NH 03301
TEL: (603) 513-1919

## CERTIFICATION

    I, Theodore Lothstein, hereby certify that a copy of this motion will be sent to all registered subscribers to this case on ECF, and further, that as soon as the identity of opposing counsel is known, I will send a copy of this motion and the accompanying Memorandum of Law to them.

                                               */s Theodore Lothstein*
                                               Theodore M. Lothstein