UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JOHN DOE, )<br>)<br>  Plaintiff, )<br>v. )<br>)<br>)<br>FRANKLIN PIERCE UNIVERSITY, )<br>)<br>  Defendant. ) | Case No. 1:22-cv-00188-PB |

**DEFENDANT FRANKLIN PIERCE UNIVERSITY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS[1]**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Franklin Pierce University ("FPU" or "Defendant"), by and through undersigned counsel, moves to dismiss three claims in Plaintiff John Doe's ("Plaintiff") Complaint.

Specifically, FPU moves to dismiss Plaintiff's (1) Title IX claim; (2) breach of covenant of good faith and fair dealing claim; and (3) negligence claim. These claims fail for the following reasons: First, Plaintiff has failed to plead sufficient facts to support his asserted erroneous outcome theory under Title IX because the Complaint lacks specific allegations that FPU's decision was erroneous because of a gender bias against Plaintiff. Second, Plaintiff's breach of the covenant of good faith and fair dealing claim fails because it is duplicative of Plaintiff's breach of contract claim and because the Complaint lacks sufficient facts to support this claim independent of Plaintiff's breach of contract claim. Lastly, Plaintiff's negligence claim fails as a matter of law because FPU does not owe Plaintiff a duty of care under New

---

[1]   FPU's Motion to Dismiss seeks only partial dismissal of the Complaint. FED. R. CIV. P. 12(a)(4) automatically extends the time to answer the remaining counts in the Complaint until after the Court rules on the Motion to Dismiss. *See Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. 12–11874–DJC, 2013 WL 3335022, at *6 (D. Mass. Jul. 1, 2013), *aff'd*, 744 F.3d 25 (1st Cir. 2014); 5B Wright & Miller, Federal Practice & Procedure § 1346 (3d ed.).

1

Hampshire law as alleged. For these reasons, FPU respectfully submits these claims should be dismissed with prejudice.

## FACTUAL BACKGROUND[2]

FPU is a private university located in New Hampshire. *Compl.* ¶ 15 (ECF No. 1). Plaintiff is an out-of-state undergraduate student at FPU, and is also a member of FPU's men's basketball team. *Id.* ¶¶ 14, 18.

After a physical altercation on October 27, 2021, Sally,[3] Plaintiff's former girlfriend, brought a complaint against Plaintiff. *Id.* ¶¶ 3-4, 29. The complaint referenced a single date. *Id.* ¶ 4. Sally and Plaintiff had been dating since their freshman year. *Id.* ¶ 3. Their relationship "was described by their friends as 'toxic'" and "they were 'on-again off-again,' breaking up prior to their junior year." *Id.* ¶ 27.

"On October 27, 2021, FPU sent a letter by email to [Plaintiff], and hand-delivered it to him 15 minutes before he was to depart for a basketball scrimmage" informing him that "he had been evicted from student housing 'on an emergency basis,' based on FPU concluding that in light of the Sally's complaint, Plaintiff 'pose[d] an immediate threat to the physical health or safety of a student or other individual arising from the allegation in the report.'" *Id.* ¶ 31. "The letter stated that the 'specific reasons for the decision' were: '[r]eported abuse of another student including suffocation, physically dragging the individual, and sexual assault.'" *Id.* The next day, Plaintiff successfully appealed the emergency removal and was allowed to stay on campus. *Id.* ¶ 33.

---

[2] FPU summarizes Plaintiff's material well-plead factual allegations for purposes of the pending Motion but ignores those allegations that are conclusory allegations and/or that merely track the legal elements of a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[3] For the sake of consistency, FPU utilizes the same pseudonyms as Plaintiff.

2

Sally's complaint against Plaintiff "alleged physical dragging, suffocation, and sexual assault on October 27th, 2021, as well as other forms of physical and emotional abuse throughout [their] relationship." *Id.* ¶ 34. The notice of Sally's complaint to Plaintiff did not completely comply with FPU's Title IX policy. *Id.* ¶¶ 35-36.

Following notification of Sally's formal complaint, FPU obtained Attorney Susan Schorr ("Attorney Schorr"), as its investigator. *Id.* ¶ 37. Thereafter, Attorney Schorr conducted her investigation into Sally's complaint from early November 2021 until January 21, 2022. *Id.* ¶¶ 38-49. According to Plaintiff, Attorney Schorr's investigation was flawed or unfair in various ways. *Id.* On February 14, 2022, the draft investigation report was sent to Plaintiff, asking him to provide any additional evidence. *Id.* ¶ 50. Plaintiff's identified advisor, Attorney Lothstein, was not included on that email. *Id.* Plaintiff did not open the email until March 6, 2022, after the deadline to submit additional evidence and respond to the draft report. *Id.* ¶¶ 50, 54.

"On March 1, 2022, [Plaintiff] received the finalized investigation report and notice of a hearing scheduled for March 10, 2022." *Id.* ¶ 84. Following Plaintiff's assertion that he lacked sufficient notice, "the March 10 hearing was continued to March 24, 2022." *Id.* Plaintiff also asserted that he had not received a Notice of Charges against him. *Id.* Subsequently, on March 15, 2022, Plaintiff received a Notice of Charges. *Id.* ¶ 85. Plaintiff then requested another continuance. *Id.* As part of that continuance request, Plaintiff asserted that Attorney Doty was now his advisor, and that Attorney Lothstein was his confidential support person. *Id.* Plaintiff's second continuance was granted. *Id.* ¶ 88.

"On March 29, 2022, [Plaintiff] submitted a Request to Dismiss the charges, [asserting that] FPU had not conducted the disciplinary proceedings with basic fairness and had conducted the proceedings in such a manner that it was no longer reasonable to expect that the process

could result in a fair and impartial decision." *Id.* ¶ 91.  In response to this request, Plaintiff was informed that FPU does not have a process to handle a motion to dismiss in the Title IX investigation process and that the Title IX process would continue. *Id.* ¶ 92.

"The conduct hearing occurred on April 5, 2022" before the FPU Decision Board. *Id.* ¶ 95. As part of that hearing, after some back and forth discussions, Attorney Kevin O'Leary ("Attorney O'Leary"), the assigned Hearing Officer, informed Attorney Lothstein that he would be allowed to attend the hearing as Plaintiff's confidential support person. *Id*. ¶¶ 7, 89-90, 92-93. "On April 8, 2022, FPU issued a decision finding sufficient evidence of two Title IX 'dating violence' violations and four code of conduct violations [but] found there was insufficient evidence to substantiate any of the Title IX 'sexual assault accusations, and thus dismissed eight of the fourteen counts." *Id.* ¶ 107. "The decision suspended John for three semesters and required him to pay restitution . . . ." *Id.* ¶ 108.

The decision was sent to Plaintiff and enclosed with the decision was information pertaining to Plaintiff's right to appeal, stating Plaintiff had to submit an appeal request within five (5) business days.  *Id.* ¶ 112.  On April 15, 2022, Plaintiff received an email from FPU's Title IX coordinator stating no appeal had been received.  *Id.* ¶ 114.  Plaintiff submitted an appeal request soon thereafter and noted that under FPU's policies, he was entitled to the entire business day to submit his request.  *Id.* ¶ 115.  Plaintiff's appeal was ultimately accepted as timely.  *Id.* ¶ 116.  On May 16, 2022, FPU released its decision, denying the appeal and the next day sent Plaintiff a letter stating that the sanctions were now effective as a final order.  *Id.* ¶ 117.

## ARGUMENT

### A.  Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires the Court to "assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom," but does not need to "draw unreasonable inferences or credit bald assertions [or] empty conclusions." *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (citation omitted). "Although the complaint need not set forth detailed factual allegations, it must provide more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Hadley v. Homebridge Fin. Servs.*, No. 19-cv-866-PB, 2020 WL 4368645, at *1 (D.N.H. July 30, 2020) (citation and internal quotation marks omitted).

### B. Plaintiff Has Failed to Allege Sufficient Facts to Plausibly Assert an Erroneous Outcome Claim Under Title IX

Title IX provides, in relevant part, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiff's claim under Title IX is premised on an erroneous outcome theory. *See Compl.* ¶ 124. Although the First Circuit has yet to definitively rule on the requirements of an erroneous outcome theory, it has followed the paradigm of requiring a claimant to sufficiently plead facts demonstrating (1) "articulable doubt" about the outcome of the challenged disciplinary proceeding and (2) assert facts "indicating that gender bias was a motivating factor" for the disciplinary decision. *Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56, 74 n.11 (1st Cir. 2019); *Doe v. Trustees of Dartmouth Coll.*, No. 21-cv-085-JD, 2021 WL 2857518, at *5 (D.N.H. July 8, 2021) (citation and internal punctuation omitted).

The requirement to plausibly connect the alleged erroneous outcome on the basis of sex is more onerous than establishing doubt as to the outcome of the disciplinary proceeding. *See Doe v. Harvard Univ.*, 462 F. Supp. 3d 51, 61 (D. Mass. 2020); *see also Yusuf v. Vassar Coll.*, 35

F.3d 709, 715 (2d Cir. 1994). To show this causal link, a claimant cannot merely rest on generic assertions, but instead must establish that "particular circumstances suggest[ ] that gender bias was a motivating factor." *Doe v. Trustees of Bos. Coll.*, 892 F.3d 67, 91 (1st Cir. 2018); *Harvard Univ.*, 462 F. Supp. 3d at 62 (dismissing erroneous outcome Title IX claim where claimant failed to connect alleged procedural errors with non-conclusory allegations of gender bias). "Cognizable allegations of gender bias typically include statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Doe v. Wentworth Inst. of Tech., Inc.*, No. 1:21-cv-10840-IT, 2022 WL 1912883, at *5 (D. Mass. June 3, 2022) (citation omitted and internal quotations omitted). Moreover, as with any Title IX claim, this claim may not be satisfied through agency principles, vicarious liability, or constructive notice. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283 (1998); *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999).

Here, the Complaint fails to adequately alleged facts plausibly establishing that the alleged erroneous outcome of the Title IX complaint brought against Plaintiff was because of his gender.[4] The Complaint lacks *any* non-conclusory allegations that the FPU Decision Board's actions *itself* with respect to Plaintiff were because of his sex. *See generally Compl.* Indeed, while the Complaint asserts that FPU's investigation and the outcome of Sally's Title IX Complaint against Plaintiff were flawed or unfair because of alleged deviations from FPU's Title IX policies, deviations from Title IX policies do not establish a violation of Title IX. *See Gebser* 524 U.S. at 292 (school's failure to follow a Title IX regulation "d[id] not itself constitute 'discrimination' under Title IX"). Moreover, while the Complaint asserts that the Title IX

---

[4] Although FPU does not move for dismissal of Plaintiff's Title IX in regard to the first element of erroneous outcome theory given the present procedural posture, FPU strongly disputes Plaintiff's allegations.

process and hearing favored Sally in some respects, that does not establish the alleged actions towards Plaintiff were *because* of gender bias. *Doe v. Univ. of Massachusetts-Amherst*, No. cv 14-30143-MGM, 2015 WL 4306521, at *9 (D. Mass. July 14, 2015); *see also Doe v. Samford Univ.*, 29 F.4th 675, 689 (11th Cir. 2022) ("even if evidence of an investigation and hearing that are inconsistent with ordinary practice may give rise to an inference of bias there is no reason to suppose that this bias concerned Doe's sex") (citation and internal alterations omitted).

Furthermore, even assuming *arguendo* that the Complaint adequately alleges these biases were because of Plaintiff's sex—which it doesn't—those allegations pertain to the alleged biases of Attorney Schorr. However, those allegations do not establish that *FPU's adverse decision* against Plaintiff was the product of gender bias as necessary to state a claim under Title IX. *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 188 (D. Mass. 2017) (dismissing Title IX erroneous outcome claim where biases were alleged against Title IX officer and investigator but lacked "particularized facts that would permit a factfinder to draw the reasonable inference that gender discrimination was a motivating factor behind the [Conduct Review Board's] decision"); *Univ. of Massachusetts-Amherst*, No. cv 14-30143-MGM, 2015 WL 4306521, at *9 (D. Mass. July 14, 2015) (dismissing Title IX claim and rejecting allegation that University's hearing board credited accuser more favorably as showing outcome of disciplinary proceeding was the result of gender bias).

As an agent of FPU for purposes of investigating the complaint against Plaintiff, FPU may not be vicariously liable for the alleged actions of Attorney Schorr under Title IX. As the Complaint acknowledges, Attorney Schorr was hired by FPU to conduct an investigation into the Title IX Complaint brought against Plaintiff, but Attorney Schorr did not decide the outcome of the Title IX process. *Compl.* ¶¶ 37, 100, 106-07. FPU cannot be vicariously liable for an

7

agent's alleged actions under Title IX. *See Gebser*, 524 U.S. at 283. Moreover, the fact that the FPU Decision Board favored Sally's testimony in some respects or found against Plaintiff in other respects, *id.* ¶¶ 104, 106-07, does not plausibly establish that the FPU Decision Board's conclusion was caused by gender bias against Plaintiff in any respect. *W. New England Univ.*, 228 F. Supp. 3d at 191 ("Although the Complaint adequately alleges an erroneous outcome due to the retroactive application of the Title IX Policy, Plaintiff fails to allege sufficient facts to demonstrate that the University's disciplinary decision was motivated by gender bias."). Indeed, the Complaint acknowledges that the FPU Decision Board ultimately *dismissed the majority of the claims* brought against Plaintiff and *rejected* Attorney Schorr's endorsements. *Compl.* ¶¶ 59, 107. In sum, the Complaint fails to state an erroneous outcome claim under Title IX because it lacks particularized allegations that the FPU Decision Board's conclusion was motivated by gender bias against Plaintiff.

Accordingly, Plaintiff's Title IX claim should be dismissed.

    **C.**    **Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim Fails Because it is Duplicative and Because There is No Viable Independent Basis Outside the Alleged Contract**

"In every agreement there exists an implied covenant that each of the parties will act in good faith and deal fairly with the other." *Seaward Constr. Co. v. City of Rochester*, 118 N.H. 128, 129, 383 A.2d 707 (1978). "To properly allege a good faith and fair dealing claim, a plaintiff must make allegations that are *separate and distinct* from those underlying his breach of contract claim." *Balsamo v. Univ. Sys. of New Hampshire*, No. 10-cv-500-PB, 2011 WL 4566111, at *4 (D.N.H. Sept. 30, 2011) (emphasis added). Moreover, the covenant of good faith and fair dealing generally does not give rise to an independent action in tort. *Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 137, 562 A.2d 187, 189 (1989). Accordingly, a separate claim will lie only where the facts make out the breach of a duty owed to the plaintiff *independent* from

the contract.  *See Bennett v. ITT Hartford Group, Inc*., 150 N.H. 753, 757 (2004).  In New Hampshire, however, "a breach of contract standing alone does not give rise to a tort action" rather, to present a viable claim for breach of the covenant of good faith and fair dealing, there must allegations establishing a breach of a duty owed outside the contract.  *See Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 613 (1978).

The Complaint lacks any allegations to support Plaintiff's breach of the covenant of good faith and fair dealing claim independent of Plaintiff's breach of contract claim.  *Compare Compl.* ¶¶ 128-133 *with Compl.* ¶¶ 135-137.  As a result, Plaintiff's breach of the covenant of good faith and fair dealing claim is duplicative of his breach of contract claim, is therefore superfluous and should be dismissed.  *See Alternative Sys. Concepts, Inc. v. Synopsys, Inc*., No. CIV. 00-546-B, 2001 WL 920029, at *3 (D.N.H. Aug. 2, 2001), *aff'd*, 374 F.3d 23 (1st Cir. 2004); *Balsamo*, 2011 WL 4566111, at *4 ("[A]llegations regarding this claim are no different than those underlying his breach of contract claim. Consequently [the] good faith and fair dealing claim is duplicative and will be addressed in his breach of contract claim.").

Moreover, to the extent Plaintiff's claim is asserted separately from his contract claim, this claim also fails.  Plaintiff's claim rests on a general duty assumed by FPU to act fairly and in good faith in regard to carrying out disciplinary proceedings as specified in its Title IX policies. *Compl.* ¶¶ 131, 135.  However, this claim does not implicate a separate, independent duty owed to Plaintiff, but rather is inextricably intertwined with FPU's alleged contractual obligations.  *See id*.  As a result, given the lack of allegations to plausibly establish such a duty is owed by FPU outside of its Title IX policies, it cannot be asserted as its own claim in tort.  *See Centronics Corp*., 132 N.H. at 137.

Accordingly, for these reasons, Plaintiff's breach of the covenant of good faith and fair dealing claim should be dismissed.

### D. Plaintiff's Negligence Claim Fails Because FPU Does Not Owe Plaintiff a Duty of Care as a Matter of Law[5]

To state a claim for negligence, Plaintiff must plead facts showing that (1) FPU owed him a duty; (2) FPU breached that duty; and (3) the breach proximately caused Plaintiff's injuries. *Coan v. New Hampshire Dept. of Envir. Servs.,* 161 N.H. 1, 7 (2010).  Under New Hampshire law, a negligence claim cannot be based on a negligent failure to perform contractual promises. *Lawton*, 118 N.H. 607, 609, 615 (1978) ("In this jurisdiction, however, a breach of contract standing alone does not give rise to a tort action."); *see also Broadus v. Infor, Inc*., 2019 WL 1992953, at *4 (D.N.H. May 6, 2019).  "Whether a duty exists in a particular case is a question of law." *Lahm v. Farrington*, 166 N.H. 146, 149, 90 A.3d 620, 623 (2014).

Here, Plaintiff alleges a duty of care predicated on FPU's rules and policies pertaining to handling "allegations of sexual misconduct, relationship violence, and violations of its conduct code."  *Compl.* ¶ 139.  The alleged duty of care owed is contractual in nature and is indistinguishable from Plaintiff's breach of contract claim. *Compare id. with id.* ¶¶ 131-132.  As a result, Plaintiff's negligence claim must be dismissed because the Complaint fails to establish a duty of care owed to him "beyond the promises made in their contractual relationship." *Doe v. Trustees of Dartmouth Coll*., No. 21-cv-085-JD, 2021 WL 2857518, at *10 (D.N.H. July 8, 2021).  The absence of a legally recognized independent duty of care in tort is fatal to Plaintiff's negligence claim.  This conclusion tracks other jurisdictions which have similarly rejected that a

---

[5] Given the Complaint's allegations, New Hampshire law governs with respect to Plaintiff's tort claims.  *See Ferren v. Gen. Motors Corp. Delco Battery Div.,* 137 N.H. 423, 425, 628 A.2d 265 (1993) (citation omitted) (outlining relevant factors); *see also* Restatement (Second) of Conflict of Laws § 159 (1971) ("If the wrongful conduct and resulting injury occur in the same state, the local law of this state will usually be applied to determine whether the defendant owed the plaintiff a duty . . . .").

university's student handbook or code of conduct or policies creating a duty of care in tort owed by the university to a student. *See Anderson v. Univ. of New England*, No. 2:21-cv-00169-GZS, 2022 WL 2340873, at *5 (D. Me. June 29, 2022); *Doe v. Amherst Coll*., 238 F. Supp. 3d 195, 228 (D. Mass. 2017) (Massachusetts law).

Accordingly, Plaintiff's negligence claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Franklin Pierce University respectfully requests that this Court grant Defendant's Partial Motion to Dismiss, dismiss Plaintiff's Title IX claim. breach of covenant of good faith and fair dealing claim, and negligence claim, with prejudice, and enter judgment in Defendant's favor on those claims.

Dated: August 24, 2022

*/s/ Ronald W. Schneider, Jr.*
Ronald W. Schneider, Jr., Esq., N.H. Bar # 12157
William J. Wahrer, Esq., *pro hac vice*

Attorneys for Defendant Franklin Pierce University

BERNSTEIN SHUR
100 Middle Street, P.O. Box 5029
Portland, ME  04104
(207) 774-1200
rschneider@bernsteinshur.com
wwahrer@bernsteinshur.com

## CERTIFICATE OF SERVICE

I certify that on this 24th day of August, 2022, the foregoing was filed on ECF, which will send electronic notice to all counsel of record in this matter.

*/s/ Ronald W. Schneider, Jr.*
Ronald W. Schneider, Jr., Esq., N.H. Bar # 12157