REQUEST TO DISMISS

      I, the responding student, ███████████████ respectfully move for the dismissal of all Title IX and Code of Conduct charges against me because Franklin Pierce University ("FPU") has not conducted the disciplinary proceedings with basic fairness. In fact, FPU has conducted the proceedings in such a manner that it is no longer reasonable to expect that the process could result in a decision that is fair and impartial with respect to both sides. I am further requesting that this motion be provided to the board members directly and that they make a ruling on the motion.

      Please note that I tried to send a version of this document to Attorney O'Leary earlier today, but my lawyers told me it didn't go through. If you did receive a similar document from me earlier today, please disregard and rely on this one.

      FPU has failed to conduct the investigation and pre-hearing process with basic fairness as follows:

Attorney Schorr's Investigative Process and Report Conclusions are Fundamentally Flawed.

1. Attorney Susan Schorr, hired by the school to conduct an investigation, did so in an inequitable and biased manner, resulting in a report that is fundamentally flawed. 34 Code Federal Regulations (CFR) 106.45 provides that a school such as FPU must undertake "an _objective_ evaluation of all relevant evidence - including both inculpatory and exculpatory evidence." Attorney Schorr's process and resulting report fail to live up to this requirement. Specifically, she provided AW a second interview to correct false and misleading statements AW made in her first interview, but provided no opportunity for me to appear for a second interview to address any credibility concerns that the investigator may have had about me. Report at 2. I am not saying that I have a right to have the same number of interviews, or the same amount of interviewing time. What I am saying, is that if AW lied in her first interview, and Attorney Schorr felt she had to conduct a second interview in order to adequately assess _AW's_ credibility, then Attorney Schorr should not have reached credibility determinations regarding _my_ credibility without a similar opportunity to answer additional questions and address additional issues that had come up during Attorney Schorr's investigation.

2. As a result, Attorney Schorr provided a fundamentally flawed investigation report that opined that AW, despite having made false statements in her first interview, was more credible than me. This conclusion was expressly based on the second interview that was afforded AW but denied to myself. In fact, at the end of my first interview, Attorney Schorr stated that there would likely be a followup interview, but she never contacted me again. Appendix 1. This flawed process during the investigation treated AW more favorably than me, and applied different standards to her than me, in violation of 34 CFR 106.45(b)(1)(i) which states that schools must "treat complainants and respondents equitably….".

3. Federal regulations state that schools must: "Require that any individual designated by a recipient as a … <u>investigator</u>, decision-maker, or any person designated by a recipient to facilitate an informal resolution process, not have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent." (Emphasis added). 34 CFR 106.45(b)(1)(iii). Attorney Schorr's flawed and inequitable process, however, provides evidence that the investigator in this matter harbored a bias, either in favor of AW specifically or complainants generally, a bias that caused the investigator to treat me differently than AW during the investigative process.

FPU's Process Violated My Right to have the Investigation Report provided to My Advisor.
1. On November 8, 2021, Attorney Schorr sent me an email, identifying herself as "the investigator retained by FPU to review the allegations of Title IX policy violations recently made involving you," and informing me that I had a right "to have an advisor present." App. 2. On November 17, 2021, I informed Attorney Schorr in writing that my "advisor", expressly identified as "Ted Lothstein," would be present for the interview. App. 2.
2. Because Attorney Schorr never followed up with me for a second interview as she had represented would likely happen, my advisor contacted Attorney Schorr on January 21, 2022 by email. In response, Attorney Schorr represented that she had already completed her report, and that she "expected you [my advisor] will be receiving that shortly and will have an opportunity to provide feedback." App. 4.
3. On February 14, 2022, FPU's Dean of Students, Andrew Pollom, sent an email to <u>only me</u>, with a copy of Attorney Schorr's completed investigation. The report and exhibits were not sent to my identified advisor, as required by FPU Policy, which states that "[b]efore the report is completed, the investigator will send the report and accompanying evidence to the Complainant and Respondent *and their respective identified advisors,*" FPU Policy at 25 (emphasis added).
4. Dean Pollom's failure to send the completed investigation to my advisor also violated federal law. 34 CFR 106.45(b)(5)(vi) provides: "Prior to completion of the investigative report, the recipient must send to each party <u>and the party's advisor,</u> if any, the evidence subject to inspection and review in an electronic format or a hard copy, and the parties must have at least 10 days to submit a written response, which the investigator will consider prior to completion of the investigative report."
5. The email disclosure form Dean Pollom provided a deadline of February 23, 2022, for me to respond to the investigation, but since it was not copied to my advisor, in violation of FPU policy and federal law, my advisor received no notice of this deadline.
6. Unfortunately, I did not see the 02/14/22 email, and did not open it until I discovered it around March 6, 2022, past the deadline. But if the investigation report had been copied to my advisor as is required by FPU Policy and federal law, my advisor would have opened the email, and I would have had the opportunity to respond to the investigation in a timely manner.

7. If FPU did provide a copy of the investigation report, and the stated deadline, to <u>AW's</u> advisor, then it thereby treated her more favorably than me. It did so, by following the rules and laws in correspondence with her while disregarding them in critical correspondence sent to me, in violation of 34 CFR 106.45(b)(1)(i) which states that schools must "treat complainants and respondents equitably….". And this disparate treatment violates a more specific provision of federal law, which provides that FPU must: "Provide both parties <u>an equal opportunity</u> to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in a formal complaint, including the evidence upon which the recipient does not intend to rely in reaching a determination regarding responsibility and inculpatory or exculpatory evidence whether obtained from a party or other source, <u>so that each party can meaningfully respond to the evidence prior to conclusion of the investigation</u>." 34 CFR 106.45(b)(5)(vi).

FPU Violated Its Own Policy and Federal Law by Not Timely Providing a Detailed Notice of Charges.
1. Because FPU did not send the Investigation Report to my advisor in violation of FPU Policy and Federal Law, I had no idea what was happening with my case until March 1, 2022, when I received a letter scheduling my hearing for March 10, 2022.
2. As of that time, FPU still had not provided me with a detailed Notice of Charges, yet the hearing was just 9 days away.
3. FPU's failure to provide me and my advisor with a Notice of Charges violates FPU's own Title IX policy, which states that "[a]t least 10 days prior to the Hearing, the Title IX Coordinator or designee will send a letter to the parties" with information regarding the charges, FPU Policy at 27, and also violated federal law which requires the school to provide respondent with a detailed notice of charges, "including the date and location of the incident, if known." 34 CFR 106.45(b)(2)(i)(B).
4. After I brought some of my concerns to HBC O'Leary's attention, he or the Board ordered the hearing postponed until March 24, 2022. But I still received no Notice of Charges.
5. My advisor emailed HBC O'Leary and brought the failure to provide a notice of charges to his attention. HBC O'Leary's response, sent directly to me, makes clear that HBC O'Leary had no idea that FPU Policy, and federal law, require a detailed notice of charges with dates and location of incidents. Appendix 5.
6. On March 15, 2022, Attorney O'Leary emailed me a Notice of Charges. This email came less than 9 full days before the re-scheduled hearing. The Notice of Charges references no less than 13 separately dated alleged violations of FPU's policies that had not been formally noticed before, including during Attorney Schorr's entire investigation process. Prior to this disclosure, the only violation that had ever been described in formal notice to me in terms of facts, date, and location of incident if known, was an alleged incident on October 27, 2021.
7. The Notice of Charges that I finally received on March 15, 2022 did not advise me that a hearing could not be scheduled less than 10 days after the Notice of

    Charges under FPU's own policies and federal law. His Notice of Charges did not ask me if I wanted a postponement to enforce that right, nor did it ask me to waive that right.

8. It is apparent to me that if I had never brought the lack of a Notice of Charges to HBC O'Leary's attention, the matter would have proceeded to full conduct hearing without any due process notice. And if I had never brought the 10-day minimum notice rule to HBC O'Leary's attention, the matter would have proceeded to hearing within less than 10 days, further violating the law.

HBC O'Leary's Rulings in Pre-Hearing Proceedings further violate FPU Policy and Title IX, by Failing to Act with Impartiality.

1. On March 21, 2022, I brought the violation of FPU Policy and violation of federal law to HBC O'Leary's attention, and asked for a postponement. I notified HBC O'Leary that going forward, my advisor would be Attorney Kaylee Doty, and my confidential support person would be Ted Lothstein. When the postponement was granted, I asked that the hearing not be scheduled during just four specific days when my confidential support person would be on a family vacation and unavailable. Two days later on March 24, further evidencing bias and/or retaliation for my pointing out rule violation after rule violation, Attorney O'Leary told me that the hearing would be rescheduled for one of those four days, April 5, 2022.

2. Further, during the 03/24/22 pre-hearing conference, Attorney O'Leary told me that I would likely not be allowed to provide my own exhibits and witnesses or present impeachment evidence at the conduct hearing, because I did not respond to the investigation report by the 02/23/2022 deadline. As explained above, my lack of response was, again, in part a result of FPU violating its own policies and failing to provide the report and deadline to my identified advisor. When I brought this to Attorney O'Leary's attention again, he told me words to the effect that all that matters is that <u>I didn't open an email</u>.

3. I was shocked that FPU would repeatedly violate its own rules with apparent impunity, but then be so ready and even eager to fault me, and deny me fundamental rights, for the single mistake of overlooking and not opening an important email. The fact that FPU would hold itself blameless for not following its own rule (and federal law) to copy my advisor on the 02/14/2022 disclosure of investigation, and then hold me strictly accountable for what is obviously a lesser and more innocent mistake, was so disappointing. It made me further lose any confidence I might have otherwise had that FPU was capable of administering a proceeding objectively, impartially and fairly to both sides.

4. Further, HBC O'Leary has strongly signaled that my advisor will not be provided the scope of cross-examination necessary for the Board to make a minimally-informed and reasonably accurate determination of AW's credibility. The Court in the Brandeis decision recognized that "[t]he ability to cross-examine is most critical when the issue is the credibility of the accuser." *John Doe v. Brandeis*, 177 F. Supp. 3d 561, 605 (2016). But in the pre-hearing conference on March 24, 2022, Attorney O'Leary indicated that impeachment evidence pertaining to the accuser and certain misleading or false statements she made during the

investigation would not be admissible. Further, Attorney O'Leary explained that AW's credibility as to other aspects of the relationship is not relevant to the determination of her credibility as to the central accusations.

5. For example, I provided a proposed exhibit of a text message that AW sent to me in January, 2020, in which she, with obvious enthusiasm, proposes engaging in a number of very explicit consensual sexual acts with me. Appendix 8. This text message accurately reflected the nature of our energetic and consensual intimate relationship. This message, however, could cause a reasonable person to believe that AW had not been "forced to engage in sexual contact without consent" in the August of 2019 as alleged in Notice of Charges A(a), had not been forced "to engage in sexual contact without consent" in "the Fall of 2019" as alleged in (A)(b), and had not engaged in sexual contact "when she was asleep and thus unable to consent" as alleged in A(c). And, my advisor or I explained to HBC O'Leary, the message specifically contradicted AW's self-serving report to Attorney Schorr that she never initiated any sexual activity in our relationship.

6. Yet, HBC told me that the text message likely would not be admissible, because it was not written on the exact date that one of the alleged sexual assaults occurred (most of which are not alleged with exact dates). And further, HBC O'Leary made clear, I would not be allowed to impeach AW's self-serving, misleading or false descriptions of the nature of the relationship, because her "general credibility" was not relevant. Even though federal law holds that the rape-shield provisions do not exclude "questions and evidence concern[ing] specific incidents of the complainant's prior sexual behavior with respect to the respondent and are offered to prove consent," HBC O'Leary told me that I likely would not be allowed to introduce the text message for the purpose of impeaching AW's misleading claims of never initiating sexual activity in our relationship, and impeaching her false claims that sexual conduct prior to that text message was coerced by me. All of this strongly signaled to me that the hearing evidence will be unduly limited, the tribunal will not rule impartially on matters of evidence, and the result will be a fatally flawed hearing outcome, given the standards set forth in the *Brandeis* decision.

7. On March 29, 2022, HBC O'Leary sent an email stating that the board as reviewed my proposed exhibits and will allow them to be part of the record during the hearing. However, HBC O'Leary again noted that questions on the documents may not be allowed if they are not relevant. Given O'Leary's prior interpretation of relevance, this causes me concern to believe that my advisor will not be able to question on crucial matters of credibility.

8. Finally, at the March 24 pre-hearing conference Attorney O'Leary told me that my confidential support/resource person would not be allowed to attend the hearing, stating words to the effect that "the rules don't allow the confidential support person to attend the hearing." However, my lawyer showed me afterwards that FPU's rules expressly allow the confidential support/resource person to attend the conduct hearing. Specifically, the FPU Policy states that the complainant and respondent are entitled "[t]o have an advisor and confidential resource person present at any meeting (i.e., meeting, interview, or conduct hearing)." FPU Policy at 16. I do not understand how a person striving to be a judge in my case could

be so ready, willing and eager to make rulings against me, without even first learning or reviewing the actual rules.
9. On March 29, 2022, HBC further stated in his email that the board has denied my request to have my confidential support person with me during the hearing. This violates FPU's own policies as stated above.
10. In each and every instance, HBC O'Leary's misapplication of the rules or misstatement of the rules has occurred in a manner that happens to prejudice me, not AW. It became even more clear to me that the overall process in this matter, from start to finish, has been hopelessly flawed, partial towards my accuser, biased against me, and lacking in any apparent intent to adhere to FPU's own rules or federal law.
11. While FPU is a private university and not subject to the requirements of due process as a public institution would be, it still has an obligation to conduct a disciplinary hearing with "basic fairness." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 601 (2016). "This obligation is separate from and in addition to the university's contractual obligations to follow its own policies." Id.
12. The mandate of "basic fairness" requires, in part, "whether the process used to adjudicate the matter was sufficient to provide the accused student a fair and reasonable opportunity to defend himself." *Brandeis*, F. Supp. 3d at 602.
13. FPU has not conducted the process in a fair manner or provided me with reasonable opportunity to defend myself. Thus, I am requesting that the charges be dismissed. The law allows for such dismissal. Specifically, 34 CFR 106.45(b)(3)(ii) allows the recipient (school) to dismiss the proceedings if "specific circumstances prevent the recipient from gathering evidence sufficient to reach a determination as to the formal complaint or allegations therein." Because a determination can no longer be reached with even minimal "basic fairness" to the parties, FPU should dismiss all counts.

I request that this motion be shared with the members of the board directly and that the members make a ruling on this motion.

Respectfully submitted,

████████████

This request to dismiss was prepared with the assistance of a New Hampshire attorney.

## Appendix to Motion to Dismiss

## Table of Contents

Last page of transcript of Attorney Schorr's single interview of ███████ 2

November 17, 2021, email with Attorney Schorr ..............................3-4

January 21, 2022, email with Attorney Schorr ............................... 5-6

March 7, 2022 email from HBC O'Leary to ███████ questioning the authority for a claimed right to a detailed notice of charges................................ 7

Text Messages Exchanged between AW and ███████ in January, 2020....... 8

| Speaker | Testimony |
|---|---|
| ▇▇▇ | Yeah I'm really excited.  I'm going to see my dog and stuff. |
| Susan Schorr | Okay, well again thank you so much for your time.  Ted, thank you and Ill – Oh, the other thing I just want to say I anticipate we'll have another time to talk but in the meantime after we say goodbye if you know, oh my goodness I forgot to say X, Y, Z to Susan, Ted or ▇▇▇ feel free to reach out to me but I would envision we'll have another bite at the apple here before I get to drafting my report. |
| ▇▇▇ | I appreciate it.  Thank you. |
| Susan Schorr | Okay. |
| Ted | Susan, have great holidays. |
| Susan Schorr | Alright.  Take care you guys.  We'll be in touch. |



Theodore Lothstein <ted@nhdefender.com>

# FW: Franklin Pierce - Title IX Investigation [MM-DB.FID1983383]

**Schorr, Susan** <Susan.Schorr@mclane.com>　　　　　　　　　　Wed, Nov 17, 2021 at 5:21 PM
To: "█████████████████████████████████"
Cc: Theodore Lothstein <ted@nhdefender.com>

HI ████—thanks for reaching out. I have also had an email exchange with Ted, your lawyer, and he and I will confer prior to your interview. I just wanted to set some realistic expectations for you in terms of scheduling. I will have my first interview with the reporting party on Friday of this week and may have other individuals to speak to before I speak with you. I will do my best to move things along as I certainly understand you would like this process behind you, but realistically, I will likely not be interviewing you until sometime after Thanksgiving.

Take care,

Susan

**Susan E. Schorr**
**Of Counsel**



45 School Street | 2nd Floor | Boston, MA 02108
(857) 305-1960 | Susan.Schorr@MCLANE.com

---

**From:** ████████████████████████████████████
**Sent:** Wednesday, November 17, 2021 2:50 PM
**To:** Schorr, Susan <Susan.Schorr@MCLANE.com>
**Subject:** Re: Franklin Pierce - Title IX Investigation [MM-DB.FID1983383]

CAUTION   EXTERNAL EMAIL

Su an,

Thank you for thi  my advi or that  will be pre ent i  my lawyer Ted Loth tein  email addre    i   Ted@nhdefender com  Please  do future communication on my personal email █████████████████ as the school blocks my lawyers messages.

Thank you,

From: Schorr, Susan <Susan.Schorr@MCLANE.com>
Sent: Monday, November 8, 2021 3:27 PM
To:
Subject: Franklin Pierce - Title IX Investigation [MM-DB.FID1983383]

Hi

I am reaching out to introduce myself as the investigator retained by Franklin Pierce to review the allegations of Title IX policy violations recently made involving you. I will be in touch again once I have a better estimate of my schedule, but I anticipate wanting to interview you in the next couple of weeks. You will be entitled to have an advisor present. I am based in Boston, so am conducting my interviews over Zoom these days.

Please let me know if you have any questions in the meantime.

Take care,

Susan

**Susan E. Schorr**
**Of Counsel**



45 School Street | 2nd Floor | Boston, MA 02108

(857) 305-1960 | Susan.Schorr@MCLANE.com



Theodore Lothstein <ted@nhdefender.com>

## RE: ▮▮▮▮▮▮▮ - checking in

**Schorr, Susan** <Susan.Schorr@mclane.com>     Fri, Jan 21, 2022 at 5:29 PM
To: Theodore Lothstein <ted@nhdefender.com>

Or should I have said uncanny?? Anyway, TGIF!

**Susan E. Schorr**
**Of Counsel**



45 School Street | 2nd Floor | Boston, MA 02108
(857) 305-1960 | Susan.Schorr@MCLANE.com

---

**From:** Theodore Lothstein <ted@nhdefender.com>
**Sent:** Friday, January 21, 2022 5:26 PM
**To:** Schorr, Susan <Susan.Schorr@MCLANE.com>
**Subject:** Re: ▮▮▮▮▮▮▮ - checking in [MM-DB.FID1983383]

**CAUTION - EXTERNAL EMAIL**

downright uncanny. Thanks Susan - ted

Ted Lothstein

Lothstein Guerriero, PLLC

Five Green Street

Concord, NH 03301

603-513-1919

Twitter: @NHLitigator

Facebook: www.facebook.com/LothsteinGuerriero

www.NHDefender.com

On Fri, Jan 21, 2022 at 4:58 PM Schorr, Susan <Susan.Schorr@mclane.com> wrote:

> Hi Ted,

Your timing is canny. I just submitted my report to the TIX office, so I expect you will be receiving that shortly and will have an opportunity to provide feedback. I would check in with the Title IX office with any additional process questions.

All best,

Susan

**Susan E. Schorr**
Of Counsel



45 School Street | 2nd Floor | Boston, MA 02108

(857) 305-1960 | Susan.Schorr@MCLANE.com

---

**From:** Theodore Lothstein <ted@nhdefender.com>
**Sent:** Friday, January 21, 2022 4:55 PM
**To:** Schorr, Susan <Susan.Schorr@MCLANE.com>
**Subject:** ▉▉▉▉▉ - checking in

**CAUTION - EXTERNAL EMAIL**

Hi Susan,

Just checking in - is there anything more that you need from ▉▉▉▉▉▉▉▉ and/or I? Thanks, - ted

Ted Lothstein

Lothstein Guerriero, PLLC

Five Green Street

Concord, NH 03301

603-513-1919

Twitter: @NHLitigator

Facebook: www.facebook.com/LothsteinGuerriero

www.NHDefender.com



**Theodore Lothstein <ted@nhdefender.com>**

# Hearing postponed

**Kevin O'Leary** <kevin@kevinolearyllc.com>   Mon, Mar 7, 2022 at 10:30 AM
To: ▮▮▮▮▮▮▮@live.franklinpierce.edu, Theodore Lothstein <lgconcord@nhdefender.com>, Andrew Pollom <Polloma@franklinpierce.edu>

Dear Mr. ▮▮▮▮▮▮: At a meeting this morning the AHB decided that it was necessary to postpone the hearing scheduled for March 10 until March 24. The Board feels that it needs additional time to prepare for the hearing. Given the postponement, I would like to postpone our pre-hearing meeting until March 22nd. I will be better prepared at that time to provide information about the hearing than I will be tomorrow. Please let me know if the 22nd works for you. I can meet anytime.

In addition, on Saturday we received an email requesting a postponement. The email included the following text, suggesting that it was part of the Title IX policy: "The Administrative Hearing Board Chair has the Administrative Hearing Board Chair that is assigned to the case will review the details and determine what, and if any, Title IX Grievance or Student Conduct charges apply." I have not been able to locate that text. Can you please share the source of that text with me so I can respond to the request?

Thank you in advance for your response. Best, Kevin
--
Kevin D. O'Leary

Investigations - Hearings
www.KevinOLearyLLC.com

Kevin@KevinOLearyLLC
▮▮▮▮▮▮▮

006

Exhibit B is a text from ▮ to ▮ and relates to ▮'s statements that she did not feel comfortable initiating sex in general with ▮ and that her lack of initiation was the source of disagreements between them. See Schorr's Investigation Report at Page 8 (citing ▮ Transcript 2 at 5-6). It also relates to ▮ disputing that she ever initiated any sexual encounter with ▮. Schorr's Investigation Report at 34. This exhibit speaks to ▮'s credibility and honesty.

Exhibit B

