UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**John Doe**

    v.                                        Case No. 22-cv-00188-PB
                                                  Opinion No. 2023 DNH 024

**Franklin Pierce University**

**MEMORANDUM AND ORDER**

A Title IX Committee at Franklin Pierce University (FPU or University) determined after an investigation and hearing that a male student, plaintiff John Doe, had engaged in dating violence against a female student, Sally Smith. The committee imposed a three-semester suspension and placed a permanent notation on Doe's academic record identifying him as a perpetrator of dating violence. After losing his internal appeal, Doe brought this lawsuit. He alleges that the University violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), by discriminating against him on the basis of his sex. He also asserts state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence. The University has filed a motion to dismiss all of Doe's claims except his breach of contract claim. For the following reasons, I grant the motion in part and deny it in part.

I.     **BACKGROUND**

Doe is an undergraduate student at FPU, a private university located in Rindge, New Hampshire. In October 2021, Smith, Doe's "on-again, off-again" girlfriend of several years filed a complaint with the University against Doe. Compl. ¶¶ 27, 31. FPU's notice of Smith's complaint, which Doe received on October 29, 2021, alleged that Doe had engaged in "[p]hysical dragging, suffocation, and sexual assault on October 27th, 2021, as well as other forms of physical and emotional abuse throughout [their] relationship." Id. ¶ 34.

FPU retained Susan Schorr to serve as an outside investigator. Id. ¶ 37. Schorr began her investigation by interviewing Smith, who described the alleged sexual assault on October 27th and provided additional information concerning twenty other "episodes of alleged sexual violence, physical violence, or other abusive behavior" by Doe. Id. ¶ 40. During her subsequent interview of Doe, Schorr questioned him about these additional episodes without giving him prior notice that they would be discussed. Id. ¶ 41. Although Schorr later conducted a second interview with Smith and told Doe that she intended to reinterview him, Schorr submitted her investigation report without speaking to Doe a second time. Id. ¶¶ 42, 46, 48.

Schorr completed her investigation and sent a draft report to FPU on January 21, 2022. Id. ¶ 44. FPU sent Doe the draft report by email on

February 14, 2022, and asked him to respond within ten days. Id. ¶¶ 50, 53. Contrary to both the University's Title IX policy and federal regulations, however, FPU failed to send a copy of the draft report to his advisor, attorney Ted Lothstein. Id. ¶¶ 50, 51, 52. Doe did not open the email containing the draft report until March 6, 2022, after the response deadline had passed. Id. ¶ 54. At that point, a hearing on the complaint had been scheduled for March 10, 2022. Id. ¶ 84. Because FPU did not provide Doe with a specific list of charges until March 15, FPU had to reschedule Doe's hearing twice, first until March 24 and ultimately until April 5. Id. ¶¶ 85-88, 95.

A few days after the hearing, the FPU Decision Board issued a decision, finding that Doe had committed two Title IX dating violence violations and four code of conduct violations. Id. ¶ 107. It dismissed the eight remaining charges without finding that any of the sexual assault allegations had been proved. Id. The Board suspended Doe for three semesters, required him to pay restitution, and placed a permanent notation in his academic record that he had been found to have committed dating violence. Id. ¶¶ 108, 118. Doe filed a timely appeal with FPU, but it was initially denied as untimely. Id. ¶¶ 114-115. The University later accepted the appeal and denied it on the merits. Id. ¶¶ 116. This lawsuit followed.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, I employ a two-step approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (cleaned up). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a

4

merely conceivable, case for relief." Sepúlveda-Villarini v. Deep's of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

### III. ANALYSIS

The University has moved to dismiss Doe's Title IX, breach of the covenant of good faith and fair dealing, and negligence claims. It argues that Doe's Title IX claim fails because the complaint does not allege sufficient facts to support a plausible claim that FPU was biased against Doe because of his sex. FPU contends that Doe's good faith and fair dealing claim must be dismissed because it is duplicative of his breach of contract claim. Lastly, the University argues that Doe's negligence claim fails as a matter of law because it does not owe him a duty of care. I discuss each claim in turn.

**A. Title IX**

Title IX of the Education Amendments of 1972 bars federally supported colleges and universities from discriminating against students "on the basis of sex." See 20 U.S.C. § 1681(a); Haidak v. Univ. of Mass.-Amherst, 933 F.3d 56, 73-74 (1st Cir. 2019).[1] "A claim of sex bias in the enforcement or design of a college's sexual misconduct policy may state a claim under Title IX." Doe v.

---

[1] As the First Circuit has recognized, "despite Title IX's language prohibiting discrimination 'on the basis of sex,' 20 U.S.C. § 1681(a), courts sometimes refer to 'gender bias' when describing the prohibited motivation." Doe v. Stonehill Coll., 55 F.4th 302, 332 n.45 (1st Cir. 2022). The parties likewise use the two terms interchangeably.

Stonehill Coll., 55 F.4th 302, 331 (1st Cir. 2022). The First Circuit has issued several decisions in recent years that address Title IX claims by students like Doe who have been disciplined for violating a college or university sexual misconduct policy. See, e.g., id.; Doe v. Brown Univ., 43 F.4th 195, 207 (1st Cir. 2022); Haidak, 933 F.3d at 73-74; Doe v. Trs. of Boston Coll., 892 F.3d 67, 90 (1st Cir. 2018). The Circuit has not settled on a single comprehensive test to evaluate such claims, but it has recognized several ways in which a plaintiff can show that a university discriminated against him based on his sex. See Stonehill, 55 F.4th at 332. The two potentially viable theories of liability that Doe pursues are "erroneous outcome" and "selective enforcement." Id. To prevail under either theory, Doe must prove that sex bias was a motivating factor behind the University's actions. See id. at 332-33; Haidak, 933 F.3d at 74.[2]

---

[2] A growing number of circuits have rejected this analytical framework, concluding that the two theories of liability "simply describe ways in which a plaintiff might show that sex was a motivating factor in a university's decision to discipline a student." Doe v. Purdue Univ., 928 F.3d 652, 667 (7th Cir. 2019); see Doe v. Univ. of Denver, 1 F.4th 822, 830 (10th Cir. 2021); Sheppard v. Visitors of Va. State Univ., 993 F. 3d 230, 236 (4th Cir. 2021); Rossley v. Drake Univ., 979 F.3d 1184, 1192 (8th Cir. 2020); Schwake v. Ariz. Bd. of Regents, 967 F.3d 940, 947 (9th Cir. 2020); Doe v. Univ. of Scis., 961 F.3d 203, 209 (3d Cir. 2020). Instead, they "ask the question more directly: do the facts alleged, if true, raise a plausible inference that the university discriminated against [the student] 'on the basis of sex'?" Purdue, 928 F.3d at 667-68. I would reach the same result under either approach.

1. Erroneous Outcome

To state a Title IX claim based on an erroneous outcome theory of liability, a plaintiff must allege (1) "facts casting some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) facts supporting a plausible claim that "gender was a motivating factor" in the decision. Stonehill, 55 F.4th at 332 (cleaned up).

The University does not challenge the first element of Doe's erroneous outcome claim. Instead, it argues that the claim is deficient because he has failed to allege sufficient facts to support a plausible inference that FPU's actions were motivated by anti-male bias. Doe responds that the procedural irregularities in his disciplinary proceeding, Schorr's decision to offer a second interview to Smith but not to Doe, and Schorr's credibility finding against Doe, together create an inference of sex bias. I agree with the University that these allegations, whether considered singly or in combination, are insufficient to state a plausible claim that sex bias infected the outcome of the proceeding.

FPU's alleged procedural errors do not lend themselves to an inference of sex bias. Generally, "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." Doe v. Harvard Univ., 462 F. Supp. 3d 51, 62 (D. Mass.

7

2020) (quoting Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994)); see also Doe v. Samford Univ., 29 F.4th 675, 689 (11th Cir. 2022). Rather, a plaintiff must "plead sufficient facts to support a plausible inference that the irregularities are attributable to sex bias," as opposed to "other plausible reasons" such as "'ineptitude, inexperience, and sex-neutral pro-complainant bias.'" Stonehill, 55 F.4th at 334 (quoting Samford, 29 F.4th at 692). Only in the exceptional case where the disciplinary process is "inexplicably and egregiously one-sided" can the procedural errors alone support an inference of sex bias. Id. at 334-35; see, e.g., Doe v. Baum, 903 F.3d 575, 586 (6th Cir. 2018) (allegations that the university appeals board "credited exclusively female testimony" and "rejected all of the male testimony" on the ground that many of the male witnesses were the respondent's fraternity brothers, while ignoring the fact that several of the complainant's witnesses were her sorority sisters, sufficient to give rise to an inference of sex bias); Doe v. Purdue Univ., 928 F.3d 652, 657-58, 669 (7th Cir. 2019) (same where the complaint alleged, among other irregularities, that the respondent was denied permission to present witnesses and the Title IX decision-maker credited the complainant's version of the event even though the complainant did not speak with the decision-maker or "even submit a statement in her own words"); Doe v. Columbia Univ., 831 F.3d 46, 57 (2d Cir. 2016) (same where the complaint alleged that the claim of sexual misconduct lacked any

support in the evidence and that the university "declined even to explore the testimony of [the respondent's] witnesses").

The complaint here fails to allege that the circumstances under which the alleged procedural irregularities arose demonstrate anti-male bias. FPU's alleged missteps include failing to provide Doe with a sufficiently detailed notice of Smith's complaint prior to the start of the investigation; failing to provide Doe with a timely notice of the charges against him; failing to send the draft investigation report to Doe's advisor; initially denying Doe's request to have a confidential support person attend the hearing; initially denying Doe's appeal as untimely; and improperly excluding impeachment evidence as to Smith and other witnesses.

As Doe acknowledges, the University corrected most of these errors once he brought them to its attention. It gave him notice of the charges prior to the hearing after he requested it, and it granted his subsequent request to continue the hearing to allow him more time to prepare his defense. Similarly, despite its initial denials, the University allowed Doe to have a confidential support person at the hearing, and it eventually accepted his appeal as timely. These circumstances suggest that any procedural missteps by FPU were mere mistakes that the University rectified, as opposed to intentional efforts to discriminate against Doe based on his sex.

9

Doe's remaining claims of procedural irregularities likewise do not support a plausible inference that sex-based animus infected the outcome of the proceeding. For example, the complaint does not allege that the hearing officer improperly allowed impeachment evidence against Doe but not Smith. Instead, at most, Doe complains that the hearing officer improperly disallowed evidence that Doe wanted to use to impeach Smith's credibility. Compl. ¶ 8. Without more, I cannot conclude that the exclusion of this type of evidence is suggestive of sex bias. Cf. Doe v. Columbia Coll. Chi., 933 F.3d 849, 856 (7th Cir. 2019) (explaining that alleged restrictions on a respondent's "access to documents relevant to the investigation" did not "demonstrate[ ] an anti-male bias" in part because "this allegation [was] divorced from gender – Doe d[id] not allege that females accused of sexual assault were allowed to review materials or that only female victims were allowed to review them").

Doe's attempt to salvage his claim by focusing on Schorr's alleged anti-male bias also falls short. The complaint alleges that Schorr interviewed Doe only once, and about topics that he was unprepared to discuss, whereas she interviewed Smith twice. Schorr then found Doe less credible than Smith because his discussion of the events was more vague. Critically, Doe does not allege that he informed Schorr that he was unprepared to discuss the topics she asked him to cover. On the contrary, the complaint acknowledges the

10

possibility that Schorr held "the mistaken view that he had prior notice and plenty of time to formulate his responses to the allegations." Compl. ¶ 58. Similarly, Doe does not allege that he asked Schorr for a follow-up interview. Instead, he only claims that she stated at the time of his interview that she anticipated a follow-up interview but ultimately did not schedule one. Lastly, the complaint acknowledges that Schorr had a legitimate reason to reinterview Smith, namely, to confront Smith with evidence suggesting that she was not entirely forthcoming in her first interview. On these allegations, Schorr's interviews and her credibility finding do not support a reasonable inference that she was biased against Doe based on his sex.

Although Doe's complaint is replete with bare allegations of bias, it fails to allege sufficient facts to support a plausible claim that anti-male bias was a motivating factor behind FPU's decision. Unlike in cases involving egregious procedural flaws, Doe "was given a meaningful opportunity to present his version of what happened" and the proceeding was not otherwise so "one-sided" to support a plausible inference that FPU was motivated to discipline Doe because of his sex. See Stonehill, 55 F.4th at 335. Indeed, the Board ruled in Doe's favor on most of the charges, including the most serious claims of sexual assault. On these allegations, it is implausible to infer that the University was motivated to find against Doe because of his sex. Thus,

11

Doe's erroneous outcome theory of liability does not yield a viable Title IX claim.

    2. Selective Enforcement

A Title IX claim based on selective enforcement requires a showing that "gender bias was a motivating factor" behind either the severity of the sanctions or the decision to initiate charges. Haidak, 933 F.3d at 74 (quoting Yusuf, 35 F.3d at 715); see Stonehill, 55 F.4th at 332. Typically, "a plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." Doe v. Trs. of Dartmouth Coll., 2022 DNH 085, 2022 WL 2704275, at *8 (D.N.H. July 12, 2022) (cleaned up); see Haidak, 933 F.3d at 74. "Unlike an erroneous outcome claim, a plaintiff can prevail on a selective enforcement claim without disturbing the factual findings made in a disciplinary proceeding." Doe v. Amherst Coll., 238 F. Supp. 3d 195, 222 (D. Mass. 2017).

The University argues that Doe's selective enforcement theory fails because he did not allege any facts suggesting that male and female students accused of sexual misconduct are treated differently, or that Doe's sex otherwise motivated the charging decision or his punishment. I agree.

With respect to differential treatment, the only potential comparator Doe has put forth is Smith. He points out that the University filed charges against him when Smith accused him of misconduct but failed to bring

12

charges against Smith when her own misconduct came to light during the investigation. Faced with a similar allegation in Haidak, the First Circuit held that it was insufficient to support an inference of sex bias. See 933 F.3d at 74. The court explained that the Title IX respondent was not similarly situated to the Title IX complainant because the complainant "affirmatively contacted the university to report her charges and to seek relief," whereas the respondent's "accusations came second in time and arose only defensively" as he chose not to initiate a charge. Id. The court added that the allegation showed, at most, that the university pursued the complainant's case instead of the respondent's "because [she] made the allegation first – not because [his] sex influenced the university." Id. So too here.

In addition, material differences between the parties' alleged misconduct prevent Smith from being used as a comparator. Smith's most serious charge was sexual assault, whereas Doe did not make a similar allegation. Instead, he alleged that Smith had stolen his phone, pushed him into a lake, bit him, and harassed him during the pendency of a mutual no-contact order. These charges are "temporally and elementally distinct from" Smith's allegations and thus preclude treating the two students as "similarly situated" for purposes of a selective enforcement claim. See Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 237 (4th Cir. 2021); see also Whitaker v. Bd. of Regents of Univ. Sys. of Ga., No. 20-13618, 2021 WL

4168151, at *3 (11th Cir. Sept. 14, 2021) (concluding that the Title IX complainant and the respondent were not similarly situated where the complainant's allegations involved conduct "clearly of greater severity, degree, and kind than the conduct underlying" the respondent's allegations). Given that Doe does not identify a similarly situated female student, his selective enforcement theory based on differential treatment fails.

To the extent Doe relies on the alleged procedural flaws in his disciplinary proceeding to support a claim that either the initiation of the proceeding or the severity of his punishment was motivated by his sex, he has not alleged adequate facts to support that claim. Looking at the allegations in totality, including those advanced in support of the erroneous outcome claim, the complaint does not plausibly allege that the sexes of the parties involved played a role in FPU's enforcement of its Title IX policies. As I explained before, it is unreasonable to draw an inference of anti-male bias from the alleged procedural defects, which were either adequately remedied or do not show that the University's treatment of either Doe or Smith is attributable to sex rather than some other reason, such as Smith's status as the complainant.

In short, Doe has not alleged that he was unfairly investigated or disciplined where similarly-situated females were not, or that his sex

otherwise motivated FPU's enforcement actions. Accordingly, I conclude that his selective enforcement theory fails.

**B.     Good Faith and Fair Dealing**

There is an implied covenant in every New Hampshire contract "that the parties will act in good faith and fairly with one another." Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624 (2009). In this type of case, the duty of good faith and fair dealing applies if the agreement vests a contracting party with a degree of discretion in performing its duties under the agreement, and that party exercised its discretion unreasonably in a way that harmed the other party. See Short v. Laplante, Trs., 174 N.H. 384, 391-92 (2021); Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 293 (1992).

The complaint alleges that FPU breached the covenant of good faith and fair dealing inherent in its contract with Doe because it conducted the Title IX investigation and adjudication in an unfair and biased manner. FPU argues that this claim must be dismissed because it is duplicative of Doe's breach of contract claim. I disagree. Doe has alleged that the implied duty of good faith cabins the University's discretion conferred by the contract to sanction Doe for violations of its policies. The claim does not duplicate Doe's breach of contract claim, which centers on the University's alleged failure to adhere to its own policies during the disciplinary proceeding.

15

## C. Negligence

To state a claim for negligence under New Hampshire law, a plaintiff must allege that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached that duty, and that the defendant's breach caused injury to the plaintiff. Carignan v. N.H. Int'l Speedway, Inc., 151 N.H. 409, 412 (2004). "Under New Hampshire law, a negligence claim cannot be based on a negligent failure to perform contractual promises." Doe v. Trs. of Dartmouth Coll., 2021 DNH 107, 2021 WL 2857518, at *10 (D.N.H. July 8, 2021); see Lawton v. Great Sw. Fire Ins. Co., 118 N.H. 607, 609, 615 (1978).

Doe alleges that FPU is liable in negligence because it breached a duty imposed by its own policies to handle disciplinary proceedings in a fair and unbiased manner. Doe has alleged in his breach of contract claim that the policies at issue are part of the parties' contract. Accordingly, because Doe brings his negligence claim based on breaches of the promises that FPU made to him in their contract, his claim necessarily fails.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss (Doc. No. 7) is granted as to Doe's Title IX and negligence claims and denied as to his breach of the implied covenant of good faith and fair dealing claim.

16

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 17, 2023

cc: Counsel of record