THE STATE OF NEW HAMPSHIRE

United States District Court – District of NH

| | |
|---|---|
| John Doe<br><br>v<br><br>Franklin Pierce University | Civil Action No. 1:22-cv-00188 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUGMENT**

John Doe, by and through counsel, Theodore Lothstein and Kaylee Doty, opposes Defendant's motion for summary judgment. In support, it is stated:

**I.     Standard of Review**

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." *Block Island Fishing, Inc. v. Rogers*, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted); *Zambrana-Marrero v. Suarez-Cruz*, 172 F.3d 122, 125 (1st Cir. 1999).

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit." *Rando v. Leonard*, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).

**II.    Background**

FPU provided a summary of the relevant factual background. Doe finds FPU's account of the facts to be mostly accurate. Doe incorporates by reference his own summary of the procedural and factual history of this case in Doc. 37-1, his Memorandum of Law in support of

1

Summary Judgment. Doe, however, flags two mischaracterizations of fact in FPU's pleading: When claiming that Doe "conced[ed]" that FPU's errors were "not intentional," FPU selectively recounts Doe's testimony from his deposition, no less than three times. ECF 36-1 at 2, 15, 24, FPU distorts the meaning of Doe's testimony by omitting part of his sentence and the very next sentence that followed: "I don't think they intentionally did anything wrong, but I think they were definitely wrong multiple times *and they knew they were wrong. They didn't want to go back and change why they were wrong.*" Doe Dep. at 198 (emphasis added). Any reasonable juror would infer from the full testimony that Doe was merely being polite, but in fact was accusing FPU of acting with intent: FPU knew it was wrong, and FPU didn't want to go back and fix it.

Second, FPU misstates Doe's response about wanting more detail about the allegations prior to his interview with Attorney Schorr. FPU argues that Doe "only wanted to know more about the 'allegations from stuff from years ago,'" ECF 36-1 at 22. However, Doe actually testified that he "didn't have enough details about any of the stuff that was going on." Doe Dep. at 67. Doe went on to say it would have been helpful to have more detail to address the allegations from years prior but did not state that he *only* wanted more detail about the older allegations and not any further detail about the more recent allegations. Doe Dep. at 67. And common sense would lead a reasonable juror to infer that if Doe had not been blindsided and confronted by 14 different allegations of misconduct over the course of two years, but instead had been questioned about the one incident for which he had actually received notice, he would have come across more credibly.

### III.   Clarifying the Legal Standards

A. <u>Breach of Contract</u>

    **a.** *Legal Standard*

First, "'as a general rule, the proper interpretation of a contract is ultimately a question of law for [the] court, and [the court] will determine the meaning of the contract based on the meaning that would be attached to it by reasonable persons.'" *Gamble v. University Sys.*, 136 N.H. 9, 13, 610 A.2d 357, 360 (1992) (quoting *Goodwin Railroad, Inc. v. State*, 128 N.H. 595, 602, 517 A.2d 823, 829 (1986)).

Second, the agreement between a student and the college he or she attends "is primarily governed by contract principles." *Gamble*, 136 N.H. at 12. While the *Gamble* Court did not have to decide that issue as the University System of New Hampshire did not dispute that its relationship with students was governed by contract principles, lower courts since *Gamble* have applied that rule. *E.g.*, *Nierenberg v. Trs. of Dartmouth Coll.*, 2017 N.H. Super. LEXIS 35, *10, 2017 WL 10259668 (N.H. Super. 07/07/17); *Havlik v. Johnson & Wales Univ.* 509 F.3d 25, 34 ("A student's relationship to his university is based in contract.").

Third, because "[t]he relationship between a university and its students is distinctive," a "strict doctrinal approach is inappropriate." *Gamble*, 136 N.H. at 12-13 (citing *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1st Cir. 1977), cert. denied, 435 U.S. 971 (1978)). Accordingly, "although the first step of analysis is to examine the language of the contract under the basic tenets of contract law, the parties' unique relationship must also be considered." 136 N.H. at 13. While the *Nierenberg* decision is nonprecedential, it serves as an informative example of how New Hampshire trial courts have construed the *Gamble* precedent. Thus, courts

construe the terms of the contract between university and student not in a manner deferential to either party, but rather according to the "reasonable expectations of the parties" considering their "unique relationship." *Nierenberg*, at *10.

Fourth, the terms of the contract - the expectations of the parties - are informed by, *inter alia*, the "rules and regulations" of the university published in student handbooks, or in today's educational settings, on official websites maintained by the university; and official publications of the university such as a "school catalog". *Gamble*, 136 N.H. at 13-14; *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998) ("[t]he student-college relationship is essentially contractual in nature" and that "[t]he terms of the contract may include statements provided in student manuals."); *Sonoiki v. Harvard Coll.*, 37 F.4th 691, 703 (1st Cir. 2022); *Doe v. Trs. of Boston Coll. (BC I)*, 892 F.3d 67, 80 n.4, 89 (1st Cir. 2018); *Havlik v. Johnson & Wales Univ.* 509 F.3d 25, 34 ("The relevant terms of the contractual language between a student and a university typically include language found in the university's student handbook."). Rules and regulations in handbooks are not construed by the court according to their meaning as asserted by the University in litigation, but rather, "the court queries what the school 'should reasonably expect' the student to understand from the language of the contract." *Doe v. Williams College*, No. 3:20-cv-30024-KAR, 2022 US Dist. Lexis 161072, *34, 2022 WL 4099273 (D. Mass. 09/07/22) (citing *BC I*, 892 F.3d at 80).

Finally, "[i]n claims involving contract breaches based on purported faulty student disciplinary proceedings, [courts] compare the procedures used to adjudicate the disciplinary complaint with the language of the contract spelling out those procedures to determine whether, given the student's reasonable expectations, there was a gap between what the school promised and what the school delivered." *Doe v. Trs. of Boston Coll. (BC II)*, 942 F.3d 527, 533 (1st Cir.

2019)). "If the facts show that the university has 'failed to meet the student's reasonable expectations[,]' the university has committed a breach.'" *Id*. (quoting *BC I*, 892 F.3d at 80).

FPU argues that they should succeed on Summary Judgment because Doe cannot show that the procedural errors "materially affected the outcome for the findings against Plaintiff." Memo at 23. However, FPU misconstrues the legal standards it relies on in coming to this conclusion. FPU quotes *Nierenberg v. Trs. of Darmouth Coll.*, No. 2152016CV00259, 2017 WL 10259668, at *3-4 (N.H. Super. Ct. July 7, 2017), as requiring a plaintiff to show "procedural errors resulting in material prejudice," however, the Court in *Nierenberg* set that standard as it is the standard of appeal provided in the school at issue's handbook. Additionally, FPU cites to *Doe v. Stonehill Coll., Inc.,* 55 F.4th 302, 329-330 (1st Cir. 2022) and *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 331 (D.R.I. 2016), however those cases, similar to *Nierenberg*, set the standard that the Plaintiff must meet based on the policies governing appeals in place at the school at issue. 55 F.4th at 329-330.; 210 F. Supp. 3d at 344. FPU's own policy surrounding appeal does not set a standard requiring that the procedural errors "materially" affect the outcome and FPU has not provided evidence to establish otherwise.

Even if FPU's policy did require that errors "materially" affect the outcome, Doe argues that much like the plaintiff in *Stonehill Coll., Inc.*, he has "plausibly alleged that, at least cumulatively . . ." the errors had a material impact on the outcome. The Court in *Stonehill Coll., Inc.* held that in reviewing procedural irregularities to determine their impact on the outcome, they must be viewed in totality, rather than in isolation. 55 F.4th 302, 329-330. FPU argues that some of the errors were corrected after the fact, effectively eliminating their impact. ECF 36-1 at 18-19; 24. However, the lack of notice of allegations prior to the interview with Attorney Schorr was never corrected. Doe was not provided with sufficient notice or an updated investigation

5

notice at any point during the investigation or review-of-draft-report process. The only time Doe received the complete notice of allegations was well after the investigation had closed.

On top of that, Attorney Schorr endorsed Smith's credibility to the hearing board in her report and during her personal appearance and testimony before the panel. At the same time, and both in the report and in her testimony, she told the hearing board that Doe was less credible. She did so, after a deficient and flawed process where Doe received a grossly inadequate notice of allegations, such that during his single interview he was blindsided by questioning regarding at least 14 different topics covering a two-year span. This was a highly prejudicial mistake that was not and cannot be corrected. It is the University's choice to provide this information to the Hearing Panel, both in writing and by requesting her personal appearance and testimony.

FPU appears to acknowledge in its motion for summary judgment that Sally Smith was not a very credible witness when it notes the following: "When any charge centered only on Plaintiff's word against Smith's word, Plaintiff was found not responsible because the AHB concluded that there was insufficient evidence to support a finding of responsibility by a preponderance of the evidence." Doc. 36-1 at 2. In other words, after a hearing that took an entire day, at best the hearing board thought Sally Smith to be no more credible than Doe, and at worst, this indicates the hearing board found her to be less credible than Doe.

Providing further evidence that the hearing board had difficulty with Sally Smith's lack of credibility: The board took the remarkable step of, in effect, applying a corroboration requirement in a sexual assault Title IX hearing on a college campus. There is no such corroboration requirement in FPU's policies. More broadly, a corroboration requirement in sexual assault prosecutions is an anachronism from an earlier era. Even in criminal prosecutions in this State where the accused is presumed innocent and cannot be found guilty absent proof

beyond a reasonable doubt, jurors are instructed that there is no requirement of corroboration of the alleged victim's testimony. *State v. Walton*, 146 N.H. 316, 319 (2001); N.H. Rev. Stat. Ann. § 632-A:6(I). And more broadly in our modern culture, most people would be insulted if a woman stated that she had been sexually assaulted and the response was: "Do you have any corroboration that it really happened, other than your word?"

The point of all of this is that this was obviously a very close case before the hearing board, where the hearing board had obvious difficulty with Sally Smith's credibility. This was a case where Doe was accused and ultimately found responsible for "relationship violence," but in the only video of actual violence between the parties presented to the hearing board, it depicted Smith assaulting Doe. In a close case, procedural errors that tend to artificially inflate Sally Smith's credibility and tend to arbitrarily diminish Doe's credibility will inflate more prejudice on the outcome of the proceeding, not less. Summary judgment must be denied because a reasonable juror could find that if FPU had adhered to its policies and had not distorted the process the artificially inflate Smith's credibility and arbitrarily diminish Doe's credibility, he would have prevailed on all charges, or he would have been found responsible for less charges, or his punishment would have been less severe. Any one of these possibilities constitutes material prejudice, so FPU is not entitled to summary judgment.

Because it was a close case, and because FPU's breaches of contract distorted the credibility-determining role of the hearing board in a manner that slanted to favor Smith, FPU misses the mark when it makes light of the fact that Doe complains only of the adverse findings and does not complain about the board's findings that exonerated him for the sexual assaults. Doc. 36-1 at 17-18. This is like an automobile dealership selling a lemon with a faulty transmission, but then defending its actions by saying that the buyer admitted that the engine

worked just fine, and the buyer admitted she was able to drive the car – in first gear, at 10 miles per hour. The fact that the hearing board found Smith to have so little credibility that she could not prevail even on a preponderance of the evidence standard without corroboration, is powerful evidence that this was a very close case, where FPU's missteps made the difference as to findings that did go against Doe.

Ultimately, FPU's actions did not meet Doe's reasonable interpretation of its Title IX policies, resulting in a breach of its contract with Doe. Accordingly, this Court should deny FPU's Motion for Summary Judgment on the issue of Breach of Contract.

B. Covenant of Good Faith and Fair Dealing

    a. *Legal Standard*

Under New Hampshire law, in every contractual agreement, "there is an implied covenant that the parties will act in good faith and fairly with one another." *Short v. LaPlante, Trs.,* 174 N.H. 384, 391 (2021). New Hampshire recognizes several implied good-faith obligations; the one applicable here is "limitation of discretion in contractual performance." *Id*. The function of this covenant "is to prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations, with common standards of decency, fairness, and reasonableness." *Id*.

There is a four-prong test, but defendant's memorandum of law in support of motion for summary judgment indicates that only two of the prongs are in dispute: that FPU exceeded the limits of reasonableness, and that its abuse of discretion caused the damage complained of. Doc. 36-1 at 23; *Centronics Corp. v. Genicom Corp.,* 132 N.H. 133, 144, 562 A.2d 187 (1989).

In its memorandum of support, FPU implies that Doe's statements that FPU did not intentionally commit procedural errors effectively absolves itself of liability under the Covenant

of Good Faith and Fair Dealing. ECF 36-1 at 24. However, as stated in Section I, Doe further stated that he believed FPU *knew* it had done something wrong and did not want to admit fault and correct them, which is most certainly not acting in good faith and fairness. FPU further attempts to confuse the issue by arguing that because Doe admitted to some of the underlying conduct and/or failed to dispute third-party testimony, "there is no basis to conclude that is was *FPU's actions* that caused Plaintiff's damages." ECF 36-1 at 25. However, as discussed and argued above, FPU failed to follow its own policies throughout the Title IX proceedings on numerous occasions; its failure to follow its policies resulted in distortion of the hearing board's critical role of weighing the credibility of witnesses including Doe and Smith; all of the prejudice resulting from the failure to follow its policies either artificially enhanced Smith's credibility or arbitrarily diminished Doe's credibility before the board; and these violations resulted in material prejudice, such that a reasonable juror could find that Doe was prejudiced with respect to the adverse findings against him, extent of punishment, or both.

FPU's arguments in favor of summary judgment on the issue of the Covenant of Good Faith and Fair Dealing are not persuasive or supported by law. Accordingly, this Court should deny FPU's Motion for Summary Judgment on the issue of the Covenant of Good Faith and Fair Dealing.

                                                  Respectfully submitted,

                                                  */s/ Kaylee Doty*
                                                  _____
                                                  Kaylee C. Doty
                                                  N.H. Bar No. 273677
                                                  Lothstein Guerriero, PLLC
                                                  5 Green Street
                                                  Concord, NH 03301
                                                  603-513-1919

/s/ *Theodore M. Lothstein*

_____
Theodore M. Lothstein
N.H. Bar. No. 10562
Lothstein Guerriero, PLLC
5 Green Street
Concord, NH 03301
603-513-1919

## CERTIFICATION

I, Theodore Lothstein, hereby certify that a copy of this motion will be sent to all registered subscribers to this case on ECF including counsel for the defendant.

*/s/Theodore M. Lothstein*

_____
Theodore M. Lothstein